UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HEARTLAND HEALTH &
WELLNESS FUND,

    Plaintiff,

v.

JANET L. BILLETER, *et al.*,

    Defendants.

Case No. 2:17-cv-214
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 21), to which Plaintiff has filed a memorandum in opposition (ECF No. 23). Plaintiff has also filed a Motion for Summary Judgment (ECF No. 22), to which Defendants have filed a memorandum in opposition (ECF No. 25). Plaintiffs have also filed a Motion for Leave to file a Sur-reply (ECF No. 27) and a Motion to Strike (ECF No. 28). The motions are ripe for consideration. For the reasons that follow, Defendants' Motion for Summary Judgment is **DENIED as MOOT**, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Plaintiff's motions for leave to file a sur-reply and to strike are **DENIED as MOOT**.

### I.    BACKGROUND

Plaintiff in this lawsuit, Heartland Health & Wellness Fund ("Plaintiff" or the "Fund") is a self-funded multiemployer fund "established and maintained pursuant to the Labor-Management Relations Act of 1947, § 302(c)(5), 29 U.S.C. § 186(c)(5) ("LMRA")." (*Compl.* ¶4, ECF No. 1.) This suit is brought on the Fund's behalf by Henry B. Taylor and Joe Chorpenning, in their capacity as trustees. (*Id.*, at p. 1.) The Fund is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* (*Id.*, ¶ 1.)

The Defendants in this lawsuit are Janet L. Billeter and her attorneys, Bordas & Bordas,

PLLC (collectively "Defendants"). Ms. Billeter was an enrollee in the Fund at the time that she sustained serious injuries in an accident on January 9, 2015, when she was struck as a pedestrian by a tractor trailer. (*Compl.*, ¶¶ 7-9, ECF No. 1.) "These injuries included fractures of the neck, back, pelvis, ribs and left arm, a collapsed lung, a lacerated liver, and a severed right arm from the shoulder and numerous surgeries." (*Def.'s Mot. S.J.*, ECF No. 21, p. 1.) The Fund alleges that, since the time of the accident, it "has paid $712,761.51 in medical treatment benefits for Defendant Billeter." (*Compl.*, ¶ 9, ECF No. 1.)

Ms. Billeter subsequently sued the driver of the tractor trailer and several entities to recover for the injuries that she suffered. (*Pl.'s Mot. S.J.*, Ex. B., ECF No. 22-2.) She was represented by Bordas & Bordas, PLLC, co-defendant in this action. (*Compl.*, ECF No. 1, ¶ 10.) The Fund alleges that "sometime between January and March 2017 Defendants settled the personal injury claim for approximately $10,000,000." (*Id.*, ¶ 11.)

The Fund brings this suit "for equitable relief to enforce the terms and preserve the assets of an employee welfare benefit Fund's subrogation and reimbursement rights under the terms of the governing Fund documents through imposition of an equitable lien by agreement or a constructive trust on funds received or to be received by Defendant from a third party, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)." (*Compl.*, ¶ 1, ECF No. 1.) The Fund asserts that it is entitled to receive "the remaining reimbursement of the $712,761.51 that the Fund paid out of a self-funded trust as medical benefits for Defendant Billeter from the funds received or to be received in the personal injury settlement." (*Id.*, ¶ 25.) The funds at issue, $712,761.51, are maintained in a trust account by counsel Bordas & Bordas, PLLC. (*See Compl.*, ¶15, ECF No. 1; Amended Answers of Janet L. Billeter (ECF No. 11, ¶15) and Bordas & Bordas, PLLC (ECF No. 10, ¶15)).

2

The Fund asserts that the Supreme Court's decision in *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 133 S.Ct. 1537 (2013), is on point and governs the case at bar. (*Pl.'s Mot. S.J.*, p. 8, ECF No. 22.) The Fund's assertion is well taken. This case is similar to *McCutchen* in all material respects except one. In this case, the plain language of the Plan disavowing the common-fund doctrine Defendants seek to impose is unambiguous, and leaves no room for equitable defenses to operate.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or

weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III. SUMMARY JUDGMENT

Although there are cross motions for summary judgment, the Court addresses the Plan's motion first. In view of this approach, the Court treats Defendants as the non-movants with respect to the evidence in the record. As discussed in more detail below, the Court grants the Fund's motion for summary judgment because the terms of the plan are clear and they foreclose the application of the equitable defenses asserted by Defendants, and because Defendants' remaining arguments are not sufficiently supported by evidence in the record. The Court also denies as moot Defendants' motion for summary judgment, which raises largely the same arguments as Defendants' opposition brief and which introduces no additional evidence that would support a different decision.[1] Likewise, the Fund's motion for leave to file a sur-reply and motion to strike are denied as moot.

---

[1] Defendants' motion for summary judgment asserts several arguments, including equitable arguments that are precluded. (*Def.'s Mot. S.J.*, ECF No. 21.) They also assert that Ms. Billeter did not actually sign the separate subrogation agreement. Taken as true, it is of no moment, because the language of the Plan set forth in detail in the Opinion below specifically states that "the Plan's subrogation and reimbursement rights shall apply regardless of whether the Person executes the [separate] Agreement." Defendants also assert that the amount of the reimbursement was not properly calculated using insurance codes, but this assertion is not sufficiently supported by the evidence in the record. (*Id.*, pp. 4-7.) Additionally, Defendants assert that they relied to their detriment on a letter from the Fund's law firm dated October 17, 2016, advising that the lien had been reduced by the Fund's stop loss coverage, such that the remaining lien amount due is $520,9990.59. (*Id.*, pp. 12-13.) However, the letter itself directs Defendants to "contact us to confirm the total amount of the Fund's subrogated interest before resolving this matter." (*Letter*

4

The Fund's complaint asserts one count, seeking to enforce the terms of the Fund documents pursuant to ERISA § 502(a)(3). (*Compl.*, ¶¶ 27-32, ECF No. 1.) ERISA § 502(a)(3)(B)(ii) provides that a "civil action may be brought by a plan fiduciary ... to obtain other appropriate equitable relief ... to enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3). The Fund asserts that it relies "on the equitable relief provided by ERISA § 502(a)(3), along with the Subrogation and Reimbursement Agreement and the Subrogation and Reimbursement provision in the Fund's governing document for their demand for equitable relief." (*Pl.'s Mot. S.J.* at p. 5, ECF No. 22.) Additionally, the Fund asserts that "[t]he Subrogation and Reimbursement provision in the Fund's governing document satisfies the requirements of an equitable lien by agreement." (*Id.*)

## A. The Plan Sets Forth an Equitable Lien by Agreement

The Fund's Rules and Regulations (the "Plan") "were originally adopted effective January 1, 1984 by the Trustees of the UFCW [United Food and Commercial Workers] Local Unions and Employers Benefit Plan of the Southwestern Ohio Area under the Plan's Trust Agreement to establish the Rules and Regulations determining the eligibility of Employees for the health and welfare benefits to be provided by the Plan and to prescribe the amount, extent, conditions and method of payment of such benefits." (*Pl.'s Mot. S.J.*, Ex. H, Heartland Health & Wellness Fund Rules and Regulations, p. 1, ECF No. 22-8.)

The Plan sets forth the duties and authorities of the Plan's Trustees. These duties include carrying out the obligation "to maintain, within the limits of the funds available to them, a sound and economical program dedicated to providing the maximum benefits for eligible Employees and Dependents ...." (*Id.*) The Fund contends that it has a right to recover benefits paid by a

---

ECF No. 23-2.) There is no additional evidence in the record in support of this assertion that would be sufficient for any reasonable jury to find that detrimental reliance was established.

third party that is legally responsible for medical payments. The Plan sets forth its rights to subrogation and reimbursement in Section 7.6(c):

> (i) <u>Plan's Rights to Subrogation and Reimbursement</u>. The Plan shall be entitled to subrogation or reimbursement with regard to all rights of recovery of a Person, or representatives, guardians, beneficiaries, fiduciaries, trustees, estate representatives, heirs, executors, administrators of any special needs trust, and any other agents, persons or entities that may receive a benefit on behalf of the Person (collectively for purposes of this section 7.6(c), "Person"), to the extent of any amounts which the Plan has paid or may become obligated to pay on account of any claim against any person, organization or other entity in connection with the injury, illness, sickness, accident or condition to which the claim relates ("Source"). A Source includes, but is not limited to, a responsible party and/or a responsible party's insurer (or self-funded protection), no-fault protection, personal injury protection, medical payments coverage, financial responsibility and any employer of the Person under the provisions of a Worker's Compensation or Occupational Disease Law. The Plan shall also be entitled, to the extent of payments made or to be made on account of the claim, to reimbursement from the proceeds of any settlement, judgment or payments from any Source that may result from the exercise of any rights of recovery by the Person. Such subrogation and reimbursement rights shall apply on a priority, first dollar basis to any recovery whether by suit, settlement or otherwise, whether there is a partial or full recovery and regardless of whether the Person is made whole and shall apply to any and all amounts of recovery regardless of whether the amounts are characterized or described as medical expenses or as amounts other than for medical expenses and regardless of whether liability is admitted or contested by the Source. Once the Plan makes or is obligated to make payments on behalf of a Person on account of the claim, ***the Plan is granted, and the Person consents to, an equitable lien by agreement or a constructive trust on the proceeds of any payment, settlement or judgment received by the Person from any Source.*** The Plan shall have no right of subrogation or reimbursement against an insurance carrier arising out of an individual policy of insurance maintained by a Person, except for a policy which provides "no-fault" automobile insurance. The Plan will not pay benefits in excess of $2,500 on behalf of any Person if such Person does not pursue his own rights of recovery to which he may be entitled from any individual, organization or other entity in connection with the injury.

(*Id.*, p. VII-22)(emphasis added.)

Additionally, in Section 7.6(c)(ii), the Plan states that it may also require the execution of a Subrogation and Reimbursement Agreement, but the rights to subrogation attach regardless of whether the separate agreement is executed:

6

The Trustees may also require the Person to execute a Subrogation and Reimbursement Agreement ("Agreement"), in a form provided by and acceptable to the Trustees, as a condition to receiving benefits for a claim. The Plan has the right to suspend all benefit payments if the Agreement is not executed by the Person or if the Agreement is modified in any way by the Person without the consent of the Plan. If the Person is a minor or is incompetent to execute the Agreement, that person's parent, the Person (in the case of a minor dependent child), the Person's spouse, or legal representative (in the case of an incompetent adult) must execute the Agreement upon request of the Plan. If the Plan, in its sole discretion, advances claims payments in the absence of an Agreement, or if the Plan advances claims payments in error, said payments will not waive, compromise, diminish, release or otherwise prejudice any of the Plan's rights to reimbursement or subrogation. ***A Person must comply with all terms of the Agreement, including the establishment of a trust for the benefit of the Plan. In this regard, the Person agrees that the amount that the Plan has advanced or is obligated to advance in benefits received from any source will be immediately deposited into a trust for the Plan's benefit and the Plan shall have an equitable lien by agreement that shall be enforceable under legal, equitable and/or injunctive action to ensure that these amounts are preserved and not disbursed. The Plan's subrogation and reimbursement rights shall apply regardless of whether the Person executes the Agreement.***

(*Id.*, p. VII-23)(emphasis added.)

### B. The Plan Unambiguously Requires a Person to Pay their own Attorney's Fees, and Disavows Common Law Defenses

Further, the Plan clearly and unambiguously provides that "the Plan's subrogation and reimbursement rights apply to any recovery by the Person without regard to legal fees and expenses of the person" "unless the Trustees, in their sole discretion, have agreed in writing to discount the Plan's claim by an agreed upon amount of such fees or expenses." Furthermore, the Plan clearly disavows common law defenses:

(iv) <u>Person's Attorney's Fees</u>. The Plan's subrogation and reimbursement rights apply to any recovery by the Person without regard to legal fees and expenses of the Person. The Person shall be solely responsible for paying all legal fees and expenses in connection with any recovery for the underlying injury, illness, sickness, accident or condition, and ***the Plan's recovery shall not be reduced by such legal fees or expenses, unless the Trustees, in their sole discretion, have agreed in writing to discount the Plan's claim by an agreed upon amount of such fees or expenses.***

(v) <u>Disavowal of Common Law Defenses</u>. The Plan specifically disavows any claims that a Person may make under any federal or state common law defense,

7

including, but not limited to, the common fund doctrine, the double-recovery rule, the make-whole doctrine or any similar doctrine or theory, including the contractual defense of unjust enrichment. Accordingly, the Plan's subrogation and reimbursement rights apply on a priority first-dollar basis to any recovery of the Person from any Source without regard to legal fees and expenses of the Person and the Person will be solely responsible for paying all legal fees and expenses. The Plan shall have a priority, first-dollar security interest and a lien on any recovery received from any Source, whether by suit, settlement or otherwise, whether there is a full or partial recovery and regardless of whether the amounts are characterized or described as a payment for medical expenses or as amounts other than for medical expenses of such injury, illness, sickness, accident or condition.

(*Id.*, VII-24)(emphasis added.)

### C. Discussion

ERISA reimbursement claims must be brought in federal district court under section 502(a)(3) as claims for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The Supreme Court interpreted the meaning of "appropriate equitable relief" in the context of a reimbursement claim in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 210-11 (2002), and explained that an action under section 502(a)(3) to enforce a reimbursement clause excluded monetary damages, and excluded an injunction or an order of mandamus to compel the payment of money to the plan out of the participant's general assets. Rather, "equitable relief" refers to "those categories of relief that were typically available in equity. . . ." (*Id.*, at 210.) "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." (*Id.*, at 210.) In *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), the Court explained that a claim to enforce a contractual promise as an equitable lien is a form of equitable relief.

The Sixth Circuit, in *Longaberger Co. v. Kolt*, 586 F.3d 459, 463 (6th Cir. 2009), *abrogated on other grounds, Montanile v. Board of Trustees*, 136 S.Ct. 651 (2016) held that

8

equitable defenses must yield when the plan's documents establish an equitable lien; and that lien may be asserted against the person's attorney, even though the attorney is not a party to the plan. *Id.*, at 468. A split developed among the federal circuit courts as to whether equitable defenses could trump the equitable lien language of a plan's reimbursement clause.[2] The split was settled by the Supreme Court in *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 133 S.Ct. 1537 (2013). In *McCutchen*, an employer providing a self-funded health benefits plan to its employees brought an ERISA § 502(a)(3) suit against a plan beneficiary who had been injured in an automobile accident, received medical treatment paid for by the plan, and later recovered money from an insurer and the driver who was at fault in the accident. The Supreme Court examined "whether, in that kind of suit, a plan participant like McCutchen may raise certain equitable defenses deriving from principles of unjust enrichment." *McCutchen*, 569 U.S. at 91.

> In particular, we address one equitable doctrine limiting reimbursement to the amount of an insured's 'double recovery' and another requiring the party seeking reimbursement to pay a share of the attorney's fees incurred in securing funds from the third party. We hold that neither of those equitable rules can override the clear terms of a plan.

*Id.*

Plaintiff asserts that the *McCutchen* decision is on point and governs the case at bar. (*Pl.'s Mot. S.J.*, p. 8, ECF No. 22.) Briefly, the Supreme Court held that, "in an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern. Neither general principles of unjust enrichment nor specific doctrines reflecting those principles – such as double-recovery or common-fund rules – can override the applicable contract." *McCutchen*, 569 U.S. at 106. The Court explained that:

---

[2] A thorough discussion of issues surrounding ERISA reimbursement clauses and equitable defenses is presented in Professor Medill's law review article. *See* Colleen E. Medill and Alyssa M. Stokes, *ERISA Subrogation After Montanile*, 95 Neb. L. Rev. 603, 617 (2016).

> The result we reach, based on the historical analysis our prior cases prescribe, fits lock and key with ERISA's focus on what a plan provides. The section under which this suit is brought "does not, after all, authorize 'appropriate equitable relief' *at large*," *Mertens,* 508 U.S., at 253, 113 S.Ct. 2063 (quoting § 1132(a)(3)); rather, it countenances only such relief as will enforce "*the terms of the plan*" or the statute, § 1132(a)(3) (emphasis added). That limitation reflects ERISA's principal function: to "protect contractually defined benefits." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The statutory scheme, we have often noted, "is built around reliance on the face of written plan documents." *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). "Every employee benefit plan shall be established and maintained pursuant to a written instrument," § 1102(a)(1), and an administrator must act "in accordance with the documents and instruments governing the plan" insofar as they accord with the statute, § 1104(a)(1)(D). The plan, in short, is at the center of ERISA. And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there.

*Id.*, at 101. However, the Supreme Court found that the U.S. Airways plan did not specifically address attorney's fees, and so McCutchen was able to prevail on his common-fund doctrine defense. "Only if U.S. Airways' plan expressly addressed the costs of recovery would it alter the common-fund doctrine." *McCutchen,* 569 U.S. at 105. In the case at bar, the terms of the Plan are clear. The plain language unambiguously sets forth an equitable lien by agreement, and forecloses the application of the equitable defenses asserted by Defendants.

Plaintiff also prays for an award of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(1) "and in accordance with the 'Subrogation and Reimbursement' provision of the Fund's Rules and Regulations (Section 7.6)."

The plaintiff's request for attorney's fees comes with a tinge of irony. The plaintiff is required to pay for the medical bills of Ms. Billeter, regardless of whether a third party tortfeasor may also be liable for the same medical expenses. Ms. Billeter, through her attorneys, has received a settlement in excess of such amounts. The plaintiff demands a 100% recovery of the payments it has made, even though the upshot will be that Ms. Billeter's contingent fee

agreement requires her to pay from her own recovery a percentage of the $712,761.51 she now owes the fund.

29 U.S.C. § 1132(g)(1) is designed to make whole a fund that expends attorney's fees to recover monies owed. Here, the fund recovered 100% of its payments from a defendant who has basically paid part of her recovery to make the fund whole. Section 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

As explained above in *McCutcheon*, the Supreme Court held that, given the language of an ERISA plan providing for full recovery of subrogated benefits, the fund was not subject to equitable defenses. Yet, the Court also was quite clear that "No one can doubt that the common-fund rule would govern here in the absence of a contrary agreement." *Id.*, at 104. In other words, since Ms. Billeter paid money to gain funds for herself and the Fund, she would be entitled to reimbursement for a proportionate share owed to the plaintiff. The Plan gives the Fund the power to demand a 100% recovery – not so with additional attorney's fees.

The Court finds that, given the 100% recovery of the plaintiff, an imposition of additional attorney's fees on the defendant would be manifestly unjust.

## IV. CONCLUSION

For the reasons stated above, the Fund's Motion for Summary Judgment (*Pl.'s Mot. S.J.*, ECF No. 22) is **GRANTED**. The Fund is entitled to judgment on Count One of its Complaint (*Compl.*, ECF No. 1) in the amount of $712,761.51. Defendants' Motion for Summary Judgment (*Def.'s Mot. S.J.*, ECF No. 21) is **DENIED as MOOT**. Plaintiff's motion for attorney's fees is **DENIED**. Plaintiff's remaining motions (ECF Nos. 27, 28) are also **DENIED as MOOT**. The Clerk is **DIRECTED** to enter judgment in this case.

**IT IS SO ORDERED.**

9-11-2018
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE